# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACOB PALIWODA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-2740-KGS |
| | ) |
| DR. JASON SHOWMAN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant Dr. Jason Showman's Motion for an Order (ECF No. 24). For the reasons stated below, the Court hereby grants in part and denies in part Defendant's Motion.

**I.  Relevant Background**

On November 21, 2012, Plaintiff Jason Paliwoda filed this medical malpractice action against Dr. Showman for allegedly failing to provide him with proper dental care and treatment. Dr. Showman subsequently filed the present Motion requesting a court order to allow *ex parte* interviews of Mr. Paliwoda's health care providers and to permit the inspection and reproduction of Mr. Paliwoda's protected health information. The present Motion also seeks a protective order prohibiting certain individuals from urging Mr. Paliwoda's health care providers to not communicate *ex parte* with Dr. Showman or his counsel. Lastly, the Motion requests an order requiring Mr. Paliwoda to sign a single blank authorization granting Dr. Showman the authority to obtain his medical records. The Court separately addresses each issue below.

**II.  Discussion**

  **A.  *Ex Parte* Communications**

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") prohibits unauthorized disclosures or misuse of protected health information by covered entities. HIPAA, however, does not prohibit all disclosures; rather, it imposes procedures on health care providers concerning the disclosure of medical information.[1] In judicial proceedings, HIPAA regulations set forth in 45 C.F.R. § 164.512(e) provide for the disclosure of protected health information under the following circumstances:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
>> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>>
>> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

The regulations plainly provide two separate and alternative methods for obtaining protected health information without violating HIPPA: (1) by court order under section 164.512(e)(1)(i) authorizing such disclosure or, alternatively, (2) by a formal discovery request,

---

[1] *Harris v. Whittington*, No. 06–1179–WEB, 2007 WL 164031, at *2 (D. Kan. Jan. 19, 2007).

such as a subpoena, when accompanied by certain required assurances and notices. In this case, Dr. Showman seeks to proceed under section 164.512(e)(1)(i) which allows the release of protected health information upon court order.

Although HIPAA and its regulations do not expressly authorize *ex parte* interviews of health care providers, judges in this District have approved a well-established practice of allowing informal *ex parte* interviews of plaintiff's treating physicians who are merely fact witnesses as long as defendant complies with HIPAA and its related regulations.[2] Courts authorize such *ex parte* interviews because "HIPAA presents certain considerations and constraints for covered entities cautious not to run afoul of the Act."[3] An order authorizing *ex parte* interviews of health care providers creates an avenue for informal discovery that might not otherwise be available. As further explained by Magistrate Judge Gerald L. Rushfelt in *Pratt v. Petelin*:

> [Opinions from this District] reason that to allow *ex parte* communications with fact witnesses, such as treating physicians, creates a just result by allowing both parties equal, unfettered access to fact witnesses. To prohibit *ex parte* communications would allow one party unrestricted access to fact witnesses, while requiring the other party to use formal discovery that could be expensive, timely, and unnecessary. Witnesses, of course, may refuse to communicate *ex parte* and thus require the parties to resort to formal discovery procedures. Less expensive informal discovery, nevertheless, should be encouraged. For these reasons a court may allow defendants access to the medical records and

---

[2] *Madrid v. Williams*, No. 12–1033–CM, 2012 WL 2339829 (D. Kan. June 19, 2012) (J. Humphreys); *Lowen v. Via Christie Hosps. Wichita, Inc.*, No. 10–1201–RDR, 2010 WL 4739431 (D. Kan. Nov. 16, 2010) (J. Sebelius); *Spraggins v. Sumner Reg'l Med. Ctr.*, No. 10–2276–WEB/KGG, 2010 WL 4568715 (D. Kan. Nov. 3, 2010) (J. Gale); *Brigham v. Colyer*, No. 09–2210–JWL–DJW, 2010 WL 2131967 (D. Kan. May 27, 2010) (J. Waxse); *Pratt v. Petelin*, No. 09–2252–CM–GLR, 2010 WL 446474 (D. Kan. Feb. 4, 2010) (J. Rushfelt); *Sample v. Zancanelli Mgmt. Corp.*, No. 07–2021–JPO, 2008 WL 508726 (D. Kan. Feb. 21, 2008) (J. O'Hara); *Bohannon v. Baker*, No. 06–1033–MLB, 2006 WL 2927521 (D. Kan. Oct. 12, 2006) (J. Bostwick).

[3] *Lowen*, 2010 WL 4739431, at *2.

> treating physicians of a plaintiff who has placed his or her physical or mental condition in issue.[4]

While the Court, under appropriate circumstances, will enter orders authorizing *ex parte* interviews with health care providers, a party submitting an order authorizing such interviews should be mindful of additional considerations. For example, any order authorizing the disclosure of health information related to treatment for alcoholic, drug dependency, and mental conditions must comply with 42 U.S.C. § 290dd-2, 42 C.F.R., Part 2, and K.S.A. § 65-5602.[5]

K.S.A. § 65-5602(a) states that a patient of a treatment facility has a privilege to prevent treatment personnel from disclosing whether a patient has received treatment or any other "confidential communications made for the purposes of diagnosis or treatment of the patient's mental, alcoholic, drug dependency or emotional condition." Disclosure of that information must be made under one of the exceptions provided in K.S.A. § 60-5603(a). K.S.A. § 60-5603(a)(3) creates an exception for "any proceeding in which the patient relies upon any of the aforementioned conditions as an element of the patient's claim or defense . . . ." Here, Mr. Paliwoda claims to have suffered mental and emotional distress as a result of Dr. Showman's purported negligence. Accordingly, the Court will include language in its order allowing disclosure of information regarding any diagnosis and treatment of any mental, alcoholic, drug dependency, or emotional condition pursuant to K.S.A. § 65-5603(a)(3).[6]

Disclosure of mental, emotional, alcohol, and drug health information for treatment "conducted, regulated, or directly or indirectly assisted by any department or agency of the

---

[4] *Pratt*, 2010 WL 446474, at *7 (internal citations omitted).

[5] *See id.* at *5–6.

[6] *See id.* at *6 (applying K.S.A. § 65-5603(a)(3) exception because plaintiff made her mental and emotional condition an issue).

4

United States" must also conform with 42 U.S.C. § 290dd-2 and 42 C.F.R., Part 2.[7] The regulations found in 42 C.F.R., Part 2 are not HIPAA regulations, but were enacted pursuant to the provisions of the Drug Abuse Prevention, Treatment, and Rehabilitation Act, 21 U.S.C. § 1175, and were later transferred into the Public Health Service Act, 42 U.S.C. § 290dd-2.[8] Under 42 U.S.C. § 290dd-2, records of the identity, diagnosis, prognosis or treatment of any patient which are maintained in connection with any program relating to substance abuse education, prevention, training, treatment, rehabilitation or research, which are conducted, regulated, or directly or indirectly assisted by any department or agency of the United States, shall be confidential, and shall be disclosed only as provided in the statute and implementing regulations.[9]

One method for obtaining these records is to obtain authorization by a court order upon a showing of good cause, which is determined by "weigh[ing] the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services."[10] Courts have found a strong presumption against disclosure under 42 U.S.C. § 290dd-2, and the privilege afforded thereunder "should not be abrogated lightly."[11] The Court cannot conclude based on the present record that Dr. Showman's Motion satisfies the statutory and regulatory requirements for production of information regarding diagnosis and

---

[7] *Id.* at *5.

[8] *McCloud v. Bd. of Dirs. of Geary Cmty. Hosp.*, No. 06–1002–MLB, 2006 WL 2375614, at *3 (D. Kan. Aug. 16, 2006).

[9] *Id.*; 42 U.S.C. § 290dd-2.

[10] 42 U.S.C. § 290dd-2(b)(2)(C).

[11] *McCloud*, 2006 WL 2375614, at *4.

5

treatment of alcoholism or drug dependency pursuant to 42 U.S.C. § 290dd-2 and 42 C.F.R., Part 2. Accordingly, the Court's order will include the following language:

> This Order does not provide for the production of any medical records maintained in connection with any program relating to substance abuse education, prevention, training, treatment, rehabilitation or research, which are conducted, regulated, or directly or indirectly assisted by any department or agency of the United States, and which are covered by the provisions of 42 U.S.C. § 290dd-2 and 42 C.F.R., Part 2.[12]

K.S.A. § 65-6001 regulates the disclosure of HIV/AIDS health information.[13] For disclosure in a civil action, one of the exceptions in K.S.A. § 65-6002(d) must apply. Dr. Showman has not demonstrated any exception exists. Therefore, the Court will not include any language authorizing disclosure of protected information under K.S.A. § 65-6001.

Any order should also advise treating physicians of their right to refuse to be interviewed informally.[14] Therefore, the Court will include the following language in its order: "Although this Order authorizes and permits all health care providers of Jacob Paliwoda to grant informal interviews, the Order does not require a health care provider to meet or speak with any attorney in this proceeding. Rather, a physician or other health care provider has a right to decline an attorney's request to speak or meet."[15]

The Court will also include a qualified protective order stating that Mr. Paliwoda's health information may not be disclosed beyond the present litigation or to any third parties outside the

---

[12] *Id.* at *5.

[13] *Pratt*, 2010 WL 446474, at *5; K.S.A. § 65-6001.

[14] *See Harris*, 2007 WL 164031, at *3 (ordering that before conducting any interviews, defendant shall advise the health care providers that they may decline to be informally interviewed).

[15] *Bohannon*, 2006 WL 2927521, at *2.

present litigation, and that all records regarding Mr. Paliwoda's health information will be returned or destroyed at the termination of the present litigation.

Therefore, based on the foregoing analysis, the Court hereby grants in part Dr. Showman's request for a court order to allow *ex parte* interviews of Mr. Paliwoda's health care providers.

**B. Inspection and Reproduction of Mr. Paliwoda's Protected Health Information**

The proposed order submitted by Dr. Showman bears the title, "Order for Inspection and Reproduction of Medical, Employment and Protected Health Information Pursuant to State and Federal Law (HIPAA) and Notification of Waiver of Physician-Patient Privilege."[16] If adopted by the Court, the proposed order would require various non-parties to make available for examination and reproduction any and all medical and employment records of any type or nature whatsoever and/or any protected health information within the respective non-party's care. These non-parties include: "All Hospitals, Clinics, Pharmacies, Physicians, Social Workers, Psychologists, Psychiatrists, Therapists; Governmental Agencies (State and Federal); All Other Medical Institutions, Practitioners and Health Care Providers; and All Employers, Past and Present."[17]

The proper procedure for obtaining documents from non-parties is to serve them with a subpoena pursuant to Fed. R. Civ. P. 45.[18] After the individual or entity served with the subpoena objects or fails to comply with the subpoena, the party seeking production "may move the

---

[16] Def.'s Proposed Order at 1, ECF No. 25–2.

[17] *Id.*

[18] *See Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 540 (D. Kan. 2006) ("The appropriate procedure to compel non-parties to produce documents is to serve them with a subpoena as set forth in Rule 45 of the Federal Rules of Civil Procedure.").

7

issuing court for an order compelling production or inspection."[19] Only then will the undersigned Magistrate Judge consider ordering non-parties to produce documents. Non-parties have a right to have their objections, if any, heard by the court before being required to produce documents.

Dr. Showman's proposed order would essentially allow him to bypass the procedures and protections afforded by Rule 45, which would result in the deprivation of the producing party's opportunity to contest the requested documents. Because of this, the undersigned declines to enter Dr. Showman's proposed order in its present state. To refrain from requiring non-parties to produce documents absent service of a valid subpoena, the Court has removed the language from Dr. Showman's proposed order indicating that the Court orders and directs non-parties to produce such information.[20] The Court's order will only indicate that the non-party has the authority pursuant to the laws of Kansas and applicable federal law, including HIPAA and 45 C.F.R. § 164.512(e)(1)(i), to disclose protected health information within the scope of this order as described above in Section II(A). Accordingly, Dr. Showman's Motion requesting an order that permits the inspection and reproduction of Mr. Paliwoda's protected health information is hereby granted in part.

### C. Protective Order

Dr. Showman also requests a protective order prohibiting Mr. Paliwoda, Mr. Paliwoda's mother Cecilia McNeal, and anyone else on behalf of Mr. Paliwoda from urging Mr. Paliwoda's health care providers to not speak with Dr. Showman or his counsel. In addition, Dr. Showman also requests that the protective order prohibit the aforementioned persons from advising Mr.

---

[19] Fed. R. Civ. P. 45(c)(2)(B)(i).

[20] The Court notes that nothing in this Order prohibits or discourages other informal discovery procedures. For example, as discussed in Section II(D), Mr. Paliwoda is free to sign appropriate release forms allowing or directing the entities sought in Dr. Showman's proposed order to release his medical records.

8

Paliwoda's health care providers that he objects to them communicating with Dr. Showman or his counsel.

Pursuant to Fed. R. Civ. P. 26(c)(1) a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." "The party seeking a protective order has the burden to demonstrate good cause."[21] To demonstrate good cause, the party must make "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"[22] This particular showing must demonstrate that the basis for the protective order falls within one of the categories enumerated in Rule 26(c).[23] Further, it is within the broad discretion of the court to determine if a protective order is appropriate and, if it is, the level of protection required.[24] In fact, the Supreme Court has reasoned that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[25]

In this case, Dr. Showman argues that a protective order is necessary because Mr. Paliwoda should not be allowed to pressure his health care providers into silence where there is no physician-patient privilege and, by filing this lawsuit, Mr. Paliwoda has put his dental and medical condition and treatment at center stage. Dr. Showman, however, does not demonstrate

---

[21] *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000).

[22] *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[23] *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05–4135–JAR, 2007 WL 1652056, at *3 (D. Kan. June 6, 2007).

[24] *Lipari v. U.S. Bancorp, N.A.*, No. 07–2146–CM–DJW, 2008 WL 4642618, at *1 (D. Kan. Oct. 16, 2008).

[25] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (internal citations omitted).

under which categories enumerated in Rule 26(c) he bases his need for a protective order. Rather, Dr. Showman relies on conclusory statements that suggest Mr. Paliwoda or others on his behalf will attempt to dissuade his health care providers from speaking with Dr. Showman's counsel *ex parte*. Dr. Showman has failed to present to the Court any reason to believe that these particular persons, one of which is not a party to this litigation, would engage in such conduct. Without a more detailed factual showing, the mere possibility of influence does not sufficiently show good cause to grant a protective order. The Court, in its discretion, hereby denies Dr. Showman's Motion requesting a protective order.

### D. Authorization for Medical and Dental Records

Dr. Showman also seeks a court order requiring Mr. Paliwoda to sign a blank authorization to obtain his medical records which would allow defense counsel to insert the names of Mr. Paliwoda's health care providers as needed. Mr. Paliwoda argues that this is unnecessary because he has already supplied Dr. Showman with medical authorizations relevant to his dental treatment from Dr. Whitten and Dr. Hall. In addition, Mr. Paliwoda opposes signing a blank authorization because it would allow access to medical information not relevant to this case.

Dr. Showman fails to cite any authority which gives this Court power to order a Mr. Paliwoda to sign a blank authorization to gain unfettered access to his health care information. Without such direction from Dr. Showman, the Court assumes he seeks to compel Mr. Paliwoda to sign this authorization under Fed. R. Civ. P. 34 and 37. Rule 34 sets forth the procedure for obtaining access to documents within the control of the opposing party. Rule 37(a)(3)(B)(iv) authorizes a court to compel the inspection of documents after a party fails to permit an inspection following a proper request under Rule 34. A court, however, does not have the

authority—under either Rule 34 or Rule 37—to compel a party to sign a release or authorization so that the requesting party may obtain a document directly from a non-party.[26] To the extent the records which Dr. Showman seeks from various health care providers are in the custody, control, or possession of a non-party, Dr. Showman may serve a subpoena on the non-party pursuant to Fed. R. Civ. P. 45. As explained by Magistrate Judge Waxse:

> It is only after the individuals or entities object on grounds of privilege or otherwise fail to produce the documents pursuant to subpoena that the Court will consider a motion requesting (1) the Court compel the entity to produce the documents pursuant to Rule 45; or (2) compel the party to execute appropriate releases pursuant to the Court's general powers to enforce its own orders.[27]

Based on the foregoing, the Court finds it lacks authority to require Mr. Paliwoda to sign a blank authorization and, therefore, denies Dr. Showman's Motion requesting such an authorization.

Accordingly,

**IT IS THEREFORE ORDERED** that Dr. Showman's Motion requesting a court order to allow *ex parte* interviews of Mr. Paliwoda's health care providers is hereby granted in part. Dr. Showman's Motion requesting an order permitting the inspection and reproduction of Mr. Paliwoda's protected health information is hereby granted in part. Dr. Showman's Motion requesting a protective order is hereby denied. Dr. Showman's Motion requesting an order requiring Mr. Paliwoda to sign a single blank authorization is hereby denied. In accordance with this decision, the Court will enter an appropriate order for disclosure of medical information.

---

[26] *Becker v. Securitas Sec. Servs. USA, Inc.*, No. 06–2226–KHV–DJW, 2007 WL 677711, at *3 (D. Kan. Mar. 2, 2007).

[27] *Johnson*, 236 F.R.D. at 540.

**IT IS SO ORDERED.**

Dated this 15th day of July, 2013, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge